In the Matter of the Claim of ARLENE M. NORMILE, Respondent, *v.* THOMAS P. SPAGNOLETTI CONSTRUCTION COMPANY, INC., et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, February 15, 1967.

*Hinman, Howard & Kattell* (*C. Addison Keeler, Jr.,* of counsel), for appellants.

*Shaw, Esworthy, O'Brien & Crowley* for claimant-respondent.

*Louis J. Lefkowitz, Attorney-General* (*Morris N. Lissauer* and *Daniel Polansky* of counsel), for Workmen's Compensation Board, respondent.

*Per Curiam.* This is an appeal from a decision finding causal relation between a blow to the head received by decedent while on the job and his ultimate death due to a malignant brain tumor; the issue being the adequacy of the attending physician's medical analysis and opinion rendered for claimant in support of causal relationship.

Decedent was found unconscious in a company truck by the side of the road. On admission to the hospital his actions were irrational — he shouted and screamed and drooled and had to be restrained. The physician who later testified attended him and released him nine days later when he had no remaining symptoms except a mild headache. Decedent had remembered, after he had become oriented in the hospital, that he had struck his head on the tailgate of the truck. Although the doctor found

no external evidence of any blow to the head, he diagnosed cerebral trauma and cerebral concussion.

After his release claimant continued to experience headaches. As they grew worse several false diagnoses were rendered until a brain biopsy was taken and the malignancy discovered. Decedent was given cobalt treatments but died five months after the accident.

The attending physician, noting that there was no history of any symptoms before the date of the accident, theorized that the trauma precipitated hemorrhaging within the pre-existing tumor and that this set off the bizarre symptomatic response experienced on the day of the accident. The doctor said claimant had a very rapid decline after this occurrence and that upon autopsy necrotic tissue was discovered which could conceivably be connected with the trauma and that the necrotic tissue might well indicate a prior hemorrhage.

The thrust of the testimony was that had it not been for the trauma the tumor would not have reacted as it did and have produced such rapid effects. Testimony branded as unclear by appellants seems clear enough as expressing the basis of the opinion. The doctor stated that normally the type of wild reaction seen in decedent would only result from a severe blow to the head easily ascertainable; that here, there being no such evidence of a *severe* blow, there must have been a pre-existing pathology that a *minor* blow could activate in order to produce such symptoms and these being '' out of all proportion to this clinical trauma then my conclusion is that the trauma he sustained, be it ever so slight, precipitated and accelerated some underlying pre-existing intracranial pathology.''

One medical expert for the carrier, although testifying against causal relationship, agreed that, although the tumor would have steadily progressed anyway, the trauma caused the manifestation of symptoms earlier than they otherwise would have appeared; and another physician testified unequivocally against causal relation.

Appellants attack claimant's medical proof as being a naked opinion without rational or clear basis; '' that he never said what he thought happened. All he testified to is the bare ' fact ' of causal relationship * * *. The mechanism of the causal relationship is left to the imagination ''. On the contrary, however, the attending physician did in fact propound a substantial theory of what occurred. He said that in his judgment the blow, admittedly a slight blow, was enough to cause a hemorrhage in the tumor and thus aggravate it. He deduced this from the facts that immediately untoward symptoms set in, that there

was necrotic tissue seen on autopsy and that decedent's condition commenced to deteriorate noticeably and rapidly from the time of the trauma on. This, of course, is his theory; but appellants do not urge that an educated medical theory may not support the opinion of causal relationship. It is not argued, nor do any cases hold, that absolute knowledge of exactly what occurred medically is necessary to support such an opinion.

As to quality of medical proof we have as guide posts *Matter of Miller* v. *National Cabinet Co.* (8 N Y 2d 277) and *Matter of Ernest* v. *Boggs Lake Estates* (12 N Y 2d 414). In the *Miller* case Judge VAN VOORHIS recognized as valid the type of testimony we have here when he stated (p. 286) : '' In all of those cases [trauma-cancer cases] the immediacy of the symptoms of aggravation of the cancer by a traumatic injury suffered in the area where the cancer was located was accepted as a substitute for scientific evidence or understanding of cause and effect.'' That is what we have here. We have no scientific evidence of exactly what happened, but the ultimate opinion of causation was influenced greatly by this substitute — the immediacy of the symptoms after the trauma.

In *Ernest,* where recovery was based on trauma aggravating an underlying tuberculosis, there was no exact medical evidence. The recovery was upheld by the Court of Appeals. The physicians in claimant's behalf merely theorized that there was a probable causal relation and on the basis of the whole record the board's award could be upheld. The medical opinion for causal relationship in the case before us is far stronger than it was there.

In two trauma-cancer cases decided here since *Miller,* we found no trouble in upholding causal relation. In *Matter of Lefkowitz* v. *Silverstein* (11 A D 2d 841) we took special note that '' claimant had observed no symptoms prior to the incident of May 10, 1955.'' In *Matter of Speregon* v. *Downtown Delicatessen* (23 A D 2d 901, affd. 18 N Y 2d 736), a brain tumor case, we would not discredit the claimant's physician's opinion regarding causal relationship.

The decision should be affirmed.

GIBSON, P. J., HERLIHY, REYNOLDS, AULISI and STALEY, JR., JJ., concur in opinion *Per Curiam.*

Decision affirmed, with costs to the Workmen's Compensation Board.